Gross, J.
Appellant was convicted of sexual activity with a child and battery of a child. We write primarily to explain why the rule of completeness did not compel admission of his exculpatory post-arrest station house statement after the state introduced a tape of a controlled phone call between the victim and appellant.
Appellant was romantically involved with the victim’s mother. He moved in with the mother and her family when the victim was 10 or 11. When she was 17, the victim disclosed to a school counselor that, for five years, she had been sexually abused by appellant.

The controlled call

Law enforcement was contacted and a detective arranged to record a controlled call between the victim and appellant. The recording was played for the jury during *270 the detective’s testimony. Pertinent parts of the call are set forth below.
Victim: I just can’t get over what has happened between me and you. And I don’t know how to get over it.
Appellant: Well, me and you—what are you talking about, like last night or the night before?
Victim: No, like having sex.
Appellant: Well, why don’t we talk about this tonight, you can’t just make it through today?
Victim: ... I can’t stop thinking about it and I can’t calm down. And I don’t have my medicine—
Appellant: Well, you left this morning fine. What—what are you—what is going on that you can’t—I just—
Victim: Because this one girl was talking about her [redacted]. And then it just triggered me. And I can’t stop thinking about it. Like I don’t—I don’t know, I can’t stop thinking about it. I can’t get over it. I just—I just want to know why. Is it because I’m not your kid, like—
Appellant: No, [Victim] and I really can’t talk to you on the phone. And I feel bad. Let me go—I’ll tell you (unintelligible) know I need to run over to your school. And I’ll come over there and we’ll talk.
[[Image here]]
... you also have to understand and take some responsibility on your own too. It’s like you’re hitting me with this stuff, and it’s like—you act like you have no clue.
[[Image here]]
Victim: Is it my fault why you had sex with me?
Appellant: No, [Victim] quit punishing yourself.
[[Image here]]
[Victim says she think she might be pregnant]
[[Image here]]
Victim: Did you always wear a condom though?
Appellant: [Victim] can we talk about this later? I feel like you’re setting me up because you start talking on the phone because somebody is listening or recording you.
[[Image here]]
Victim: But I don’t want to tell the police.
Appellant: Well, don’t tell the police. If you tell the police, [Victim] everything is over. Your brother and sister, whatever would have come of them for sure is done. Your mother can’t afford them, nothing like that. I’m done. I’m going to go to prison for the rest of my life. And then where are you going?
[[Image here]]
Victim: ... I just want to know why you had sex with me. That’s [unintelligible] reason. I’m always thinking about it. I always blame myself. And I feel so disgusting about myself. And I feel like I did something wrong.
Appellant: You didn’t do anything wrong, [Victim], other than—the only thing I know of that I can tell you where you went—where you went wrong on your part is, is you wanted to do something, okay, and you wouldn’t take no for an answer. You insisted on it.
And then now that you’ve gotten older you’re like what the f* * *, now I feel dirty and stuff like that. And it’s like, well, from the time that that happened up until now, why didn’t you do this years ago?
Appellant was arrested the same day the call took place. During station house questioning by a detective, appellant contends that “he denied having sexual rela *271 tions or contact with [the victim] sixteen times.”

The rule of completeness did not require admission of appellant’s station house statements along with the controlled call

Appellant argues that, under the rule of completeness, his statement to the police, made later the samé day as the controlled call, should have been admitted right after the recorded telephone conversation with the victim. .
The rule of completeness does not apply here because appellant’s exculpatory statements to the detective do not clarify or shed light on his statements made to an entirely different listener, the victim in the controlled call. The rule has been applied to different parts of the same statement; at its most extreme, it has been applied to related statements to the same person.
Typically at trial, a defendant’s statement during police interrogation is hearsay; it is a statement “other than one made by the [defendant] while testifying at the trial ,.. offered in evidence to prove the truth of the matter asserted.” § 90.801(l)(c), Fla. Stat. (2014). When offered by the state, a defendant’s out-of-court statement falls under the admission exception to the rule against hearsay—it is offered “against” the defendant and is his own statement. § 90.803(18)(a), Fla. Stat. (2014). A defendant’s attempt to offer his own statement claming innocence during police questioning usually runs afoul of the rule against hearsay. The admission exception does not apply because the defendant is not offering it “against” a party, but to buttress his own case. See Calloway v. State, 210 So.3d 1160, 1183 (Fla. 2017) (“Self-serving hearsay statements are generally inadmissible.”). This application of the rule against hearsay often requires a defendant to take the witness stand if he wants to tell his story, where he is subject to cross-examination.'
■ Appellant sought to admit his prior statements under the rule of completeness, codified at section 90.108(1), Florida Statutes (2014), which provides in pertinent part:
When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him or her at that time to introduce any other part or any other writing or recorded statement that in fairness ought to be considered contemporaneously.
(Emphasis added).
The purpose of the statute is to “avoid the potential for creating misleading impressions by taking statements out of context.” Larzelere v. State, 676 So.2d 394, 401 (Fla. 1996). As the Florida Supreme Court has explained,
Fairness is clearly the focus of this rule. Thus, when a party introduces part of a statement, confession, or admission, the opposing.party is ordinarily entitled to bring out the remainder of the statement. This rule is not absolute, and the correct standard is whether, in the interest of fairness, the remaining portions of the statements should have been contemporaneously provided to the jury.
Ramirez v. State, 739 So.2d 568, 580 (Fla. 1999) (internal citations omitted). Ramirez describes the most common fact pattern, where - a party offers, only a portion of a statement and his opponent seeks admission of other parts of the same statement under the rule .of completeness.
Appellant focuses on the plain language of section 90.108(1), which allows not just omitted parts of the same statement, but also' “any other writing or recorded statement that in fairness ought to be considered contemporaneously” with the statement already introduced in evidence.
*272 In practice, the statute has never been given the broad application urged by appellant. Taken-to its extreme, such a reading would require the contemporaneous admission of any written or recorded statement that might cast light on an admitted statement. Using the language of section 90.108(1), “fairness” does not require turning a trial into a voyage on a sea of hearsay.
In practice, when the statute has been applied to require the contemporaneous admission of “other” writings or recorded statements, all the statements or conversations are between the same parties.
For example, in Kaezmar v. State, the state played an edited version of recorded conversations between the defendant and an undercover detective, during which the defendant thought the detective would help him frame someone else for a murder. 104 So.3d 990, 1000 (Fla. 2012). Eliminated from this edited version, were the defendant’s statements where he said that he was framing someone else because he was innocent. Id. The rule of completeness required the contemporaneous admission of these statements. Id. Thus, although Kaez-mar involved separate conversations, the separate conversations were between the same two persons.
Similar to Kaczmar, Johnson v. State involved two statements of a defendant in a manslaughter case—one immediately after his arrest and another in a “formal statement” at the police station where he claims self defense. 653 So.2d 1074, 1075 (Fla. 3d DCA 1995).'Because the opinion uses the terms “police officer” and “detective” interchangeably, it appears that the same officer heard both statements, distinguishing that case from this one. The third district held that section 90.108 allowed the defendant to question the .“detective/officer” about the formal statement after “the State had introduced [the defendant’s] first, informal statement.” Id. Although the two statements were separated by a short period of time, they were arguably part of a continuous process of interrogation. Johnson is consistent with cases applying section 90.108(1) to require, admission of the portion of a defendant’s statement relating to a defense to criminal charges. See Metz v. State, 59 So.3d 1225, 1227 (Fla. 4th DCA 2011).
Unlike Kaezmar and Johnson, the statements made by appellant during the controlled call were to the victim. And the statements later made by appellant, where he protested his innocence, occurred during his interrogation by the police. The two statements “were made to different persons in different settings and could not be viewed as a single continuous narrative or process of interrogation.” People v. Hubrecht, 2 A.D.3d 289, 769 N.Y.S.2d 36, 37 (2003). The trial court did not err in' refusing to admit the station house statements shortly after the tape of the controlled phone call with the victim.
We also reject appellant’s argument that the rule of completeness allowed him to introduce certain exculpatory station house statements after the state used a different portion of that statement to impeach appellant on cross-examination. We agree with the trial court that the portions appellant sought to admit were not related to the portions used for impeachment, so "they did not “explain or shed light upon" the p'árt already admitted.” Charles W. Ehrhardt, Florida Evidence § 108.1, at 55-56 (2006 ed.).
No error in sentencing has been demonstrated.- Tragically, the victim committed suicide between the trial and the sentencing hearing. At trial she testified that she had tried to commit suicide because she “felt disgusting and like nothing” and thought suicide would take her *273 away from the situation. The suicide attempt led her, several weeks later, to tell her counselor about the abuse. “A statement regarding the extent of the victim’s loss or injury" is a permissible factor to consider at sentencing. § 921,231(l)(n), Fla. Stat. (2014). The victim’s suicide demonstrated the extent of her psychological injury. It was therefore appropriate for the sentencing judge to consider the testimony concerning the victim’s suicide at the sentencing hearing.

Affirmed.

Ciklin, C.J., and Kuntz, J., concur.